VALENTI LAW APC
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
10174 Austin Drive #1116
Spring Valley, CA 91979
Phone: (619) 540-2189

Attorney for Stewart Thompson

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>NB PALMILLA LLC; NBPL REAL ESTATE LLC; and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq*.) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq*.)<br><br><u>DEMAND FOR JURY TRIAL</u> |

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

*"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff STEWART THOMPSON (hereinafter referred to as "Plaintiff") complains of NB PALMILLA LLC, a California limited liability company doing business as PALMILLA COCINA Y TEQUILA; NBPL REAL ESTATE LLC. a California limited liability company; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I. PARTIES

1. Plaintiff STEWART THOMPSON is a California resident and a qualified physically disabled person. He has paralysis and uses a wheelchair for mobility. Mr. Thompson prides himself on his independence and on empowering other disabled persons to be independent.

2. Defendants NB PALMILLA LLC, NBPL REAL ESTATE LLC, and DOES 1-10, are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to

amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4. Defendants own and owned the property located at 3110 Newport Blvd, Newport Beach, CA ("Subject Property") at all relevant times.

5. Defendants operate and operated a restaurant doing business as PALMILLA COCINA Y TEQUILA, ("restaurant"), located at the Subject Property, at all relevant times.

6. Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## III. FACTS

10. Mr. Thompson uses a wheelchair for mobility.

11. Defendants' business is open to the public, a place of public accommodation, and a business establishment.

12. Mr. Thompson went to the restaurant with his family on June 7, 2026. The receipt Plaintiff received for parking and his family's meal are shown in the photos below.







13. As Mr. Thompson arrived at the restaurant, he immediately noticed the accessible parking stall and access aisle were intentionally obstructed by Defendants. Palmilla Cocina y Tequila had physically positioned their hostess,

hostess stand, a large decorative macrame desk, umbrellas and other furniture on top of the disabled parking stall and access aisle, rendering them inaccessible. The one disabled stall provided by Defendants is also rendered inaccessible due to the obstructed access aisle. This disabled stall was already occupied by another vehicle, so Mr. Thompson was unable to park in a disabled stall. Since his car utilizes hand controls the valet employee had Mr. Thompson find his own parking spot. Plaintiff was forced to park in a standard stall. The photo below shows the result of Defendants' policy, practice, and procedure to entirely obstruct the accessible space and access aisle.




/ /

/ /

14. It is unclear whether Palmilla Cocina y Tequila has a policy and procedure of having the valet employees park disabled customer's vehicles for them, or if they are required to park their vehicles themselves. Either way, there is no disabled valet loading/unloading zone available for disabled customers as required by the Americans with Disabilities Act and the California Building Code. Without a loading zone, Defendants place their disabled customers at risk of being hit by a car as they transfer into and out of their vehicles while using the valet services.

15. Once parked in a standard stall, Plaintiff had great difficulty transferring into and out of his wheelchair without an access aisle providing clear space. Plaintiff was barely able to fit his wheelchair between his car and the car parked next to him. He had to strain his body to make the transfer and was anxious about making the transfer safely. He was also stressed about the parking situation during his meal, because it was likely he would be unable to get back into his car after his family finished their meal. Access aisles protect the clear space needed for a wheelchair user to transfer safely into and out of their vehicle. When a vehicle parks too closely to a disabled person's vehicle, disabled people are sometimes stuck waiting for the other driver to return and move their automobile before they can get back into their own vehicle. This results in disabled persons waiting several minutes to hours before they can again gain access to their vehicle.

16. The difficultly, discomfort, and embarrassment Plaintiff experienced as he attempted to simply park in the disabled parking stall and take his family to dinner, led him to feel that Defendants are unwelcoming to disabled customers and disregard their accessibility needs. It was especially frustrating to see the disabled parking stall and access aisle disrespected by Defendants' willful obstruction of the legally required accessible parking area.

17. It is clear that Palmilla Cocina y Tequila has discriminatory policies, practices, and procedures of knowingly and willfully obstructing the disabled

parking stall and adjoining access aisle legally required by the Americans with Disabilities Act and the California Building Codes.

18. Defendant's discriminatory policies, practices, and procedures require disabled wheelchair users, including Plaintiff, to find parking elsewhere because they do not provide the required number of accessible stalls. This is a popular restaurant, and it was not surprising to Plaintiff that the only dedicated disabled stall would be full. When this stall is occupied, the policies and procedures of Palmilla Cocina y Tequila require disabled persons such as Plaintiff to find a standard parking stall elsewhere.

19. Parking in a standard stall puts disabled customers at risk of being blocked in by other vehicles and unable to get out of their vehicle or get back into it. They are also at greater risk of being hit by a car while transferring to and from their wheelchair. Defendants also take away their disabled customers' rights to the shortest accessible route available and put them at risk of personal injury as they navigate their own route to and from the entrance of the restaurant based on where they end up parking. Wheelchair users such as Plaintiff are forced to wheel behind parked cars and travel against oncoming vehicular traffic on their way to and from the entrance of the restaurant.

20. Because of these entirely preventable policies, practices, and procedures, Plaintiff did not have full and equal access to Palmilla Cocina y Tequila and its facilities.

21. This lawsuit is the result of Defendant's disregarding their accessibility obligations under the law.

22. During Plaintiff's visit, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

23. Plaintiff encountered discriminatory policies, practices, and procedures that interfered with and denied Plaintiff the ability to use and enjoy the

goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property. These policies, practices, and procedures violate the Americans with Disabilities Act.

24. These discriminatory policies, practices, and procedures are enacted and followed by Defendants in the ordinary course of business, not in response to isolated or temporary interruptions in service or access due to maintenance or repairs.

25. The discriminatory policies, practices, and procedures create barriers to accessibility for their disabled customers such as Plaintiff.

26. The discriminatory policies, practices, and procedures existed during Plaintiff's visit to Palmilla Cocina y Tequila. Plaintiff personally encountered these discriminatory policies and procedures.

27. These discriminatory policies, practices, and procedures denied Plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment. Because of Defendants' willful obstruction of the disabled parking stall and the access aisle, Plaintiff was deterred from parking in the disabled stall and forced to park his car in a standard stall further from the entrance to the restaurant. It was extremely frustrating and degrading for Plaintiff to lose his physical protections provided by the disabled stall and access aisle while Defendants had furniture and an employee standing on top of the International Symbol of Accessibility right in front of him. Plaintiff was forced to strain his body in order to transfer into and out of his vehicle, find his own route to the restaurant, and was stressed and unable to fully enjoy his time with his family because he knew he would have to face the discrimination, embarrassment, and physical risks of getting back into his car safely after their meal. The discriminatory policies, practices, and procedures of Defendants led Plaintiff to feel that they are unwelcoming to disabled customers and disregard their accessibility needs.

28. Unfortunately, during Plaintiff's visit, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

29. Plaintiff also encountered barriers that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property.

30. These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2025 CBC").

31. Parking for patrons visiting the Subject Property is among the facilities, privileges, advantages, and accommodations offered by Defendants.

32. According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

33. When parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2025 CBC 11B-502 et seq; 2025 CBC 11B-208.2.

34. However, there is no accessible parking for disabled persons at the Subject Property because there are insufficient accessible parking spaces designated for disabled persons and/or the existing ostensibly designated space or

spaces are significantly noncompliant with the applicable ADA and CBC standards.

35. Parking facilities with 26-50 parking stalls, such as the parking facility located at the Subject Property, must provide two disabled parking stalls and an access aisle. It appears there were once two designated accessible parking spaces and adjoining access aisle, but Defendants have intentionally obstructed one of the parking stalls and the access aisle, rendering it useless. There is now only one compliant parking stall and no compliant access aisle available for Palmilla Cocina y Tequila's disabled customers. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2025 CBC 11B-502 et seq; 2025 CBC 11B-208.2.

36. Valet parking lots do not reduce the required number of accessible stalls required per parking facility. This valet parking lot has 26-50 parking stalls and requires two accessible stalls with an unobstructed access aisle between them. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2025 CBC 11B-502 et seq; 2025 CBC 11B-208.2; 28 C.F.R. §36.211(a); 2025 CBC 11B-108; 2010 ADA §502 et seq.; 2025 CBC 11B-209.4; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

37. When valet parking is provided, there must be at least one passenger loading zone designated and marked for disabled persons. It must have an access aisle at least 60 inches wide and 20 feet long adjacent and parallel to the vehicle pull-up space. There is no accessible disabled loading/unloading zone provided. 2010 ADA §209.2; 2010 ADA §503; 2010 ADA §503.2; 2010 ADA §503.3; 2025 CBC 11B-208.1; 2025 CBC 11B-209.4; 2025 CBC 11B- 503; 2025 CBC 11B-503.2; 2025 CBC 11B- 503.3; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

38. The adjacent access aisle must be clear of obstructions. The disabled parking stall and adjacent access aisle had an employee, a hostess stand, large umbrellas, large pieces of furniture, and valet parking signs located within it. ADA 2010 §502.3; 2025 CBC 11B-502.3; 2025 CBC 11B-108; 28 C.F.R. §36.211(a).

39. The tow away sign required by the California Building Code stating that vehicles parked in designated accessible spaces not displaying a disabled placard or license plate will be towed, is missing the required information. There is no information identifying the company responsible for towing away vehicles nor their telephone number. 2025 CBC 11B-502.8.2.

40. There is no accessible route from the parking area to the entrance of the restaurant. The existing route is obstructed by Defendant's placement of the above-mentioned items in the parking stall and access aisle creating access barriers to disabled customers such as Plaintiff. 2010 ADA §206; 2025 CBC 11B-206; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

41. In parking lots or garages, accessible parking spaces must be located on the shortest accessible route to the accessible entrance. Forcing disabled customers to find alternative parking because there are not the required number of accessible stalls available, puts disabled persons such as Plaintiff at great physical risk of injury while they navigate their own route to the restaurant behind parked cars and against oncoming vehicular traffic. When disabled customers are forced to park in a standard stall the route they must find is not the shortest accessible route to an accessible entrance. 2010 ADA §208.3.1; 2025 CBC 11B-208.3.1.

42. Where dining surfaces are provided for the consumption of food and drink, at least 5% of those must be accessible in each separate seating area. It is not sufficient that there be an accessible table in one seating area if other separate seating areas do not have an accessible table; such a scenario essentially relegates disabled patrons to a segregated area. There are minimum and maximum height requirements for an accessible dining table, as well as minimum dimensions for the clearance underneath so that the legs and toes of a person in a wheelchair can fit under the table.

43. None of the outdoor tables are accessible to a person in a wheelchair. Where dining surfaces are provided for the consumption of food and drink, at least

5% of those must be accessible. There must be minimum dimensions for the clearance under an accessible dining table so that the legs and toes of a person in a wheelchair can fit under the table. In particular, the required depth for toe clearance under an accessible table is a minimum of 17 inches. 2010 ADA §226.1; 2010 ADA §306.2.3; 2010 ADA §306.2.5; 2010 ADA §902; 2025 CBC 11B-226.1; 2025 CBC 11B-306.2.3; 2025 CBC 11B-306.2.5; 2025 CBC 11B-902.

44. The restaurant does not have a lowered portion of the bar's main counter. This bar also does not have the required knee and toe clearance required for disabled customers such as Plaintiff. 2010 ADA §226.1; 2010 ADA §306.2.3; 2010 ADA §306.2.5; 2010 ADA §902; 2025 2025 CBC 11B-226.3; 2025 CBC 11B-902.3; CBC 11B-226.1; 2025 CBC 11B-306.2.3; 2025 CBC 11B-306.2.5; 2025 CBC 11B-902.

45. Where restrooms are provided, each restroom must be accessible. 2010 ADA §213.2; 2022 CBC 11B-213.2. Among other requirements, a restroom with toilet compartments must include at least one such compartment with sufficient width and maneuvering space for a wheelchair user to transfer to and from the toilet. 2010 ADA §604.3.1; 2010 ADA §604.8; 2025 CBC 11B-604.3.1; 2025 CBC 11B-604.8.

46. The men's restroom has a trash can and permanent shelving installed into the wall obstructing the transfer space beside the toilet. Clearance around a water closet shall be 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. This restroom does not have the required clear floor space available. 2010 ADA §604.3.1; 2025 CBC 11B-604.3.1; C.F.R. §36.211(a); 2025 CBC 11B-108.

47. The stall door in the men's restroom is not self-closing. 2010 ADA §604.8.1.2; 2025 CBC 11B-604.8.1.2

48. The maximum height of a compliant coat hook is 48 inches. However, the height of the coat hook in the men's restroom is currently 58 inches. 2010 ADA §603.4; 2025 CBC 11B-603.4.

49. The men's restroom contains two grab bars located 32.25 inches above the finish floor. Accessible grab bars are required to be located 33 to 36 inches above the finish floor. 2010 ADA §609.4; 2022 CBC 11B- 609.4.

50. The men's restroom's sink has a cabinet underneath it which creates an access barrier for persons using a wheelchair such as Plaintiff. The sink has only six inches of knee and toe clearance underneath it so that a person in a wheelchair cannot get close enough to reach the faucet or soap dispensers without straining their neck or back. Some wheelchair users would not be able to reach the faucets or soap dispensers at all due to limited strength and mobility further from their bodies. The toe and knee clearance must extend as far back as the faucet controls. 2010 ADA §306.2; 2010 ADA §306.2.3; 2010 ADA §306.3.3.; 2010 ADA §606.2; 2025 CBC 11B-306.2; 2025 CBC 11B-306.2.3; 2025 CBC 11B-306.3.3; 2025 CBC 11B-606.2.

51. Defendants have failed to maintain accessible features. 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

52. The photos below show one or more of these violations.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /




Jun 8, 2026 at 9:45:46 PM
Newport Blvd, Orange County
Index number:7141


Jun 8, 2026 at 9:46:42 PM
Newport Blvd, Orange County
Index number:7153


Jun 9, 2026 at 3:10:11 PM
Newport Blvd, Orange County
Index number:7198
Valet
$10
NO PARKING


Jun 9, 2026 at 3:09:11 PM
Newport Blvd, Orange County
Index number:7193


Jun 9, 2026 at 3:09:24 PM
Newport Blvd, Orange County
Index number:7195


Jun 8, 2026 at 9:47:53 PM
Newport Blvd, Orange County
Index number:7154
UNAUTHORIZED VEHICLES NOT DISPLAYING DISTINGUISHING PLACARDS OR LICENSE PLATES ISSUED FOR DISABLED PERSONS WILL BE TOWED AWAY AT OWNERS EXPENSE
TOWED VEHICLES MAY BE RECLAIMED BY
TELEPHONING
PARKING ONLY VAN ACCESSIBLE
MINIMUM FINE $250


Jun 9, 2026 at 3:08:24 PM
Newport Blvd, Orange County
Index number:7186


Jun 9, 2026 at 3:15:33 PM
Newport Blvd, Orange County
Index number:7214


Jun 9, 2026 at 3:15:32 PM
Newport Blvd, Orange County
Index number:7213


Jun 9, 2026 at 3:44:02 PM
Newport Blvd, Orange County
Index number:7249







53. The barriers existed during Plaintiff's visit to the Subject Property. Plaintiff personally encountered these barriers.

54. These inaccessible conditions and barriers denied Plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

55. These inaccessible policies, procedures, and practices and barriers denied Plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment. Because of the lack of compliant parking and a compliant access aisle, Plaintiff was forced to park in a standard stall. Without compliant parking or a compliant access aisle, Plaintiff was placed at risk of being blocked in by other vehicles and unable to get out of his vehicle or get back into it. He was also at greater risk of being hit by a car while transferring to and from his wheelchair. Plaintiff also had great difficulty transferring into and out of his wheelchair from his vehicle and had to strain his body in order to do so. Without an access aisle to protect his required transferring space, Plaintiff was barely able to manage fitting

his wheelchair between the cars and transferring into and out of his chair safely. He was also stressed about the parking situation during his meal because it was very likely he would be unable to get back into his car after his family finished their meal.

56. These policies, procedures, and practices and barriers denied Plaintiff full and equal access due to his disability because, *inter alia*, they caused Plaintiff anxiety, difficulty, discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

57. Plaintiff has Article III standing because he visited the subject property to enjoy a meal with a friend. The Subject Property is conveniently located and in the general area where he lives, shops, goes to medical appointments, visits family and friends, recreates, and does other normal activities in his daily life. Therefore, in addition to his concrete plan to return to the Subject Property to test for ADA and CBC compliance, Plaintiff also intends to return to the Subject Property in the near future to purchase another meal with friends and/or family, after the accessibility barriers alleged herein have been removed.

58. Plaintiff alleges that Defendants knew that the barriers prevented equal access. Plaintiff further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

59. Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. “A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities.” 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

60. The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2025 CBC 11B-108 as follows:

> Features for accessibility must be permanently functional, unobstructed and may not be removed. It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

61. Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

62. To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

63. On information and belief, Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

64. The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, are barriers Plaintiff may encounter when he returns to the premises. All public accommodations must

be brought into compliance with all applicable federal and state accessibility requirements.

**FIRST CAUSE OF ACTION**

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq*.)

(Against All Defendants)

65. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

66. More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

67. In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

68. In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

69. As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

70. The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such

modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

71. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

72. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

73. The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per

§12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

74. On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

75. Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

76. Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

**SECOND CAUSE OF ACTION**

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq*.)

(Against All Defendants)

77. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

78. California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

79. California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

80. California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

81. California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

82. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

83. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52. Per Civil Code §51(f), "A violation of the right of any

individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

84. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

85. The discriminatory denial of equal access to and use of the described public facilities caused Plaintiff difficulty, discomfort, and embarrassment.

86. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

## PRAYER FOR RELIEF

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a

preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3. Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

4. Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5. Grant such other and further relief as this Court may deem just and proper.

DATED: August 31, 2026

VALENTI LAW APC

By: */s/ Matthew D. Valenti*

Matthew D. Valenti
Attorney for Plaintiff
Stewart Thompson

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: August 31, 2026

VALENTI LAW APC

By: */s/ Matthew D. Valenti*

Matthew D. Valenti
Attorney for Plaintiff
Stewart Thompson